**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:  ASBESTOS PRODUCTS
LIABILITY LITIGATION (No. VI)                     MDL DOCKET NO.:  875

This document relates to all CVLO cases on
The attached "Exhibit 1"

**CERTAIN DEFENDANTS' RESPONSE IN OPPOSITION TO ISSUANCE OF NEW
SCHEDULING ORDER AND BRIEFING SCHEDULE**

COME NOW Certain Defendants (hereinafter "Defendants") by and through Forman

Perry Watkins Krutz & Tardy LLP, as counsel, and submit this their Response in Opposition to

Issuance of a New Scheduling Order and Briefing Schedule in the above referenced cases[1], and

in support thereof, Defendants state as follows:

I.      **INTRODUCTION**

When the litigation of these cases in MDL 875 began in earnest in 2009, there were 5,000

cases pending that were filed by the Cascino Vaughan Law Offices "CVLO."  The efforts of this

Court, by and through Judge Lowell Reed and Judge David Strawbridge have reduced that initial

inventory to 120 cases.  In order to achieve this result, Judge Reed held five (5) in-person status

conferences prior to his retirement and the transfer of the cases to Judge Strawbridge on April

18, 2011.  At the time of the transfer of the cases to Judge Strawbridge, Judge Reed had reduced

the CVLO MDL 875 inventory from 5,000 cases to 1,700 cases.  In twenty-four (24) months,

Judge Reed reduced the number of CVLO claims pending by approximately 65% percent.  On

---

[1] This Response and Objection is being filed on behalf of numerous defendants involved in these CVLO
MDL-875 cases.  It sets out the procedural history of the cases generally and provides the context for certain issues
that arose during the pendency of these actions.  There may be facts or unique procedural issues in the individual
cases that warrant further consideration by the Court.  When that is the case, the defendant(s) in those cases will
advise the Court of any additional issues in individual, case specific responses.

average, during Judge Reed's tenure over these cases, 137.5 plaintiffs per month were dismissed and most of those dismissals were voluntary dismissals by the plaintiffs.

Judge Strawbridge began presiding over these matters in April 2011, and he placed each and every remaining case on a scheduling order.  To address the numerous discovery issues that arose during the discovery process, Judge Strawbridge held multiple in-person conferences in Philadelphia as well as sixty-five (65) weekly telephone conferences.  Due to rulings made by Judge Strawbridge and affirmed by this Court and voluntary dismissals, the number of remaining CVLO cases subject to this Court's Show Cause Order is 120 – a 93% reduction in the overall inventory.

All of the remaining 120 cases have been subject to a scheduling order and the discovery period for each case has long since closed.  Expert reports have been filed by the parties and the dispositive motions are now fully briefed.  It is the position of Defendants that these cases are ripe for rulings on the various dispositive motions and then remand.  Defendants urge this Court not to enter new scheduling orders in these cases due to the significant time, effort and expense that has been expended by the Defendants to date and begin the process of setting dispositive motions for hearing or in the alternative ruling on the papers.  Defendants set forth their arguments more fully below.

## II.     PROCEDURAL HISTORY

In May 2009, MDL 875 presiding Judge Eduardo C. Robreno referred approximately 5,000 MDL 875 cases brought by CVLO to Judge Lowell A. Reed.  *See,* May 4, 2009 Order, attached hereto as Exhibit "2."  CVLO dismissed approximately 3,000 of those cases following their assignment to Judge Reed.

A.   <u>Initial Case Assessment and Progression of Cases under Judge Reed</u>

Judge Reed scheduled a mediation planning conference for August 27, 2009 to develop an organized method to mediate and provide initial discovery for the CVLO inventory. *See,* June 30, 2009 Order, attached hereto as Exhibit "3." During this meeting, counsel for plaintiffs agreed to submit forms for each of the Southern Illinois cases detailing "each plaintiff's asbestos exposure history and claimed disease diagnosis, the alleged manufacturer of the products involved, and how long the plaintiff worked at each job site and what job he or she performed." *See,* September 3, 2009 Progress Report and Case Management Order, at paragraph 4.a., attached hereto as Exhibit "4." Plaintiffs' counsel also agreed to review each Southern Illinois case and voluntarily dismiss any cases or defendant for which no viable claim was present. *Id.* at paragraph 5.

On November 19, 2009, parties met again and developed a protocol for discovery regarding physician witnesses and discovery regarding product identification and exposure. *See,* November 23, 2009 Progress Report and Case Management Order, attached hereto as Exhibit "5." Counsel was also given a deadline to submit memoranda on the issues of applicable statutes of repose and choice of law and response to same. *Id.* During the March planning session, parties agreed to submit proposals regarding an agreement for dismissal of unimpaired non-malignant cases. *See,* March 29, 2010 Progress Report and Case Management Order, attached hereto as Exhibit "6." On August 17, 2010, parties met and agreed upon a document repository to hold all AO12 submissions and any other relevant medical information. *See,* August 25, 2010 Progress Report and Case Management Order, attached hereto as Exhibit "7." Plaintiffs' counsel was required to "submit the records on a rolling basis by district…" *Id.* at paragraph 1.

## B.   Standard Set of Interrogatories Developed under Judge Reed.

One of the issues addressed by Judge Reed while presiding over these cases was the need for plaintiffs to individually respond to a standard set of interrogatories.  Accordingly, there were discussions between plaintiffs' counsel and defense liaison counsel and ultimately on October 5, 2010, an agreed set of interrogatories was adopted by the Court.  *See* Order for Agreed Set of Interrogatories, attached hereto as Exhibit "8."  The Court stated in the initial Order governing the agreed master set of interrogatories that "Objections shall not be made to any question or part thereof," and the responses were due in full for each plaintiff in the CVLO MDL 875 inventory by November 17, 2010.  *See, id.* at paragraph 6.  The Court granted an extension of time for plaintiffs to respond and the final deadline for the response to the standard interrogatories was February 21, 2011.  *See* Order for Extension of Time to Respond to Standard Discovery, attached hereto as Exhibit "9."  In addition to submitting all interrogatory answers, plaintiffs were also required to submit all available x-ray films or digital copies of the films to the document repository by February 21, 2011.  *See,* January 31, 2011 Progress Report and Case Management Order, attached hereto as Exhibit "10."  In response to this deadline, plaintiffs' counsel requested and allowed to "send the medical providers of their clients, medical record requests, and if necessary, discovery subpoenas...The cost of these discovery efforts will be borne by plaintiffs." *See,* February 27, 2011 Letter Order, attached hereto as Exhibit "11" at paragraph 2.

## C.   Assignment of Cases to Magistrate Judge David R. Strawbridge.

In April 2011, due to Judge Reed's retirement, Judge Robreno reassigned the remaining cases, including eleven cases on appeal to the 3rd Circuit, to Magistrate Judge David R. Strawbridge.  *See,* April 19, 2011 Order, attached hereto as Exhibit "12."  On April 27, 2011, parties met with Judge Strawbridge to discuss the status of the inventory as well as a plan for

continued discovery on these cases.  During this meeting, it was determined that the "Top 50" malignancies would be worked up first.  *See,* May 2, 2011 Letter Order, attached hereto as Exhibit "13."  Plaintiffs were to identify these cases, provide a list of pending defendants, a list of necessary witnesses, and all medical records by May 3, 2011.  *Id.*  In an effort to streamline the discovery process, Judge Strawbridge initiated a "Deposition Protocol" to govern the "Procedures for Alleged Injured Party and Siteworker Depositions" in the CVLO cases.  *See,* Order Setting Certain Terms of a Deposition Protocol, attached hereto as Exhibit "14;" *see also,* Deposition Protocol – Final, attached hereto as Exhibit "15."  Judge Strawbridge also issued orders to ensure the efficient collection of medical records and propounding additional discovery requests by the parties, including discovery relating to the bankruptcy trusts.  *See,* Order Regarding Certain Discovery Issues, attached hereto as Exhibit "16;" *see also,* Medical Records Collection Protocol, attached hereto as Exhibit "17" and Order Re: Mr. Setter Providing Requested X-rays to Plaintiffs' Counsel, attached hereto as Exhibit "18."  Furthermore, Judge Strawbridge developed a protocol to address discovery issues relating to documents authored by Drs. Schonfeld, Anderson, and Sadek.  *See,* Memorandum Opinion concerning the Omnibus Order regarding Schonfeld, Anderson, and Sadek discovery, attached hereto as Exhibit "19;" *see also,* Scheduling Order for Schonfeld, Anderson and Sadek, attached hereto as Exhibit "20."  An expert deposition protocol was also developed for these cases.  *See,* Expert Deposition Protocol, attached hereto as Exhibit "21."  As this Court can see, Judge Strawbridge worked with the parties to resolve all discovery issues arising in these matters to ensure the cases could proceed in an efficient manner.

D.      **Scheduling Orders for CVLO cases**

During his tenure presiding over the CVLO cases, Judge Strawbridge has overseen the orderly progression of the CVLO inventory.  On June 9, 2011, Judge Strawbridge entered the scheduling order for the top 10 cases.  Then on July 15, 2011, he began issuing Case Management and Scheduling Orders (CMSOs) in groups of the CVLO cases.  After these first orders, six more scheduling orders were issued at the rate of approximately one per month.

When these scheduling orders had been in place for several months, the parties advised Judge Strawbridge of their concerns over the tight deadlines and the enormous amount of work required to complete the discovery in these hundreds of remaining cases.  After lengthy consultation with the parties at both in-person conferences as well as the weekly telephone conferences, Judge Strawbridge found it necessary to revise the scheduling orders.  The initial scheduling orders were amended multiple times to accommodate the requests of the parties for additional time prior to the in person conference on March 5, 2012.  At that conference, the court held lengthy discussions with the parties regarding their concerns about the deadlines for these cases.

The Court entered these amended scheduling orders on April 12, 2012.  *See*, Orders, attached hereto as Exhibit "22."  These scheduling orders further divided CVLO 1 & 2 into three subgroups of A, B, & C and re-set discovery deadlines for groups 3 - 7.  For the top 10 cases, discovery had already closed on December 7, 2011.  For subgroup A, the Court closed fact discovery on April 20, 2012.  For subgroup B, the Court closed fact discovery on May 21, 2012.  For subgroup C, the Court closed fact discovery on June 15, 2012.  For the remaining groups, CVLO 3-7, the deadlines for fact discovery passed on July 13, 2012, August 3, 2012, August 24, 2012, September 14, 2012, and October 15, 2012, respectively.

Notwithstanding the fact that the April 12, 2012 scheduling orders were agreed to by the parties, after the Orders were entered Plaintiffs' filed objections. *See,* Objections to April 2012 Scheduling Orders, attached hereto as Exhibit "23." This Court heard these objections and overruled them on May 29, 2012. *See,* Order Overruling Objections to April 2012 Scheduling Orders, attached hereto as Exhibit "24." Despite the amendment to the Scheduling Orders the groups of plaintiffs being worked up were large and the deadlines were onerous. However, the Defendants met all deadlines throughout the discovery process.

During the course of pre-trial discovery for the CVLO matters, issues and/or disputes routinely arose between the parties. In order to timely address these numerous issues, Judge Strawbridge established a weekly call between the parties. In addition to the weekly telephone conference, Judge Strawbridge would hear oral argument on motions on an as needed basis. There were numerous requests for extension of time in individual cases and for groups of cases. Judge Strawbridge considered each of these requests individually, often granting the parties brief, reasonable extensions when the request was timely made. There were other times where Judge Strawbridge found that discovery extensions were not warranted. *See, e.g.,* Order re: *Krause and Holtzman*; *see also,* Order re: *Czajkoski,* attached hereto as Exhibit "25." To further assist the parties, Judge Strawbridge granted the request of the Plaintiffs and subdivided CVLO Groups 3-7 allowing more time for filing and briefing dispositive motions. *See,* Orders to Subdivide Groups 3-7, attached hereto as Exhibit "26."

### E.   Plaintiffs' Co-Worker Lists

In June of 2012, after discovery closed for some groups and only a few months remained for discovery in others, CVLO began the onslaught of filing varying versions of a document titled "Site workers by job sites for IL & WI job sites" and "Site worker witness past testimony

by jobsite for IL & WI job sites" (hereinafter referred to as "job site worker list" and "past testimony list").

The initial job site worker list served on June 12, 2012, was 553 pages, and the past testimony list was 166 pages. *See,* "Site workers by job sites for IL & WI job sites" and "Site worker witness past testimony by jobsite for IL & WI job sites." *See,* June 12, 2012 Job Site Worker List, attached hereto as Exhibit "27." The pleading was an attempt by CVLO to supplement its answers to the Standard Interrogatories in **all** of its cases. These lists have been amended sixteen (16) times, growing at one point to over 1,500 pages long. After two (2) separate hearings on Defendants' Motion to Strike and/or Bar the lists, Judge Strawbridge has issued his first Order striking the lists in the CVLO 3 cases on December 27, 2012. *See,* Memorandum Opinion, attached hereto as Exhibit "28." The most recent order striking these lists for the top 10, CVLO 1 & 2 and CVLO 4-7 was handed down on April 1, 2013. *See,* Order, attached hereto as Exhibit "29." "**The list's generality and lack of detail render it incapable of being used by any defendant in any particular case.**" *See,* Exhibit "28" at p. 6 (emphasis added).

### III.   NEW SCHEDULING ORDERS FOR CVLO CASES WILL RESULT IN SIGNIFICANT PREJUDICE TO THE DEFENDANTS

From the time these cases were assigned to Judge Reed for handling and continuing throughout the process with Judge Strawbridge, the plaintiffs have sought to make the discovery process as confusing and burdensome as possible. Rather than availing themselves of the time permitted for fact and expert discovery provided by the CMSOs, they instead failed to timely provide interrogatory responses; they failed to serve verified interrogatory responses; they objected to the agreed scheduling orders entered April 12, 2012; they continued to file pleadings in an omnibus fashion, including seventeen (17) versions of the site worker list and previous

testimony lists as well as untimely, supplemental expert reports, all of which were intended to supplement the standard interrogatory responses in all CVLO cases.  Multiple in-person hearings were held by Judge Strawbridge as well as weekly conference calls regarding these discovery issues and the points raised by both plaintiffs and defendants were systematically handled as part of the discovery process.  After a review of the many Orders issued, it is clear that Plaintiff's pervasive discovery abuses were repeatedly and necessarily brought to the Court's attention by Defendants in a timely manner and as contemplated by the Rules and local practice with respect to the efficient handling of these cases as implemented by the Court.

### A.  Objections to Amended Scheduling Orders.

As this Court is well aware, the scheduling and management of any significant number of mass tort cases is always a hotly contested issue with sometimes one but often multiple parties pressing the court for additional time to complete discovery.  As detailed above, there were great efforts made by both Judge Reed and Judge Strawbridge to place these cases on an efficient but reasonable track.  Those efforts by Judge Strawbridge included the March 5, 2012 hearing where he listened to both argument and the opinion of the parties regarding the scheduling of the remaining cases.  Following those discussions, he put the burden on the parties to submit a "collaboratively drafted amended scheduling order(s)."  *See*, Exhibit "30."  Proposals were submitted to Judge Strawbridge and a list of points that the parties were unable to agree on was also provided.  Judge Strawbridge again listened to arguments of counsel and then on April 12, 2012 entered the amended scheduling orders.  After all of these opportunities to be heard and all input was considered, Plaintiffs filed an objection to the entry of these scheduling orders.  This Court overruled those objections on May 29, 2012.  In that Order overruling the Plaintiffs objections, this Court found:

> Judge Strawbridge's scheduling orders were not "clearly erroneous and contrary to the law." Rather, Judge Strawbridge's scheduling orders in the CVLO cases were necessary to ensure the "just, speedy and inexpensive," <u>see</u> Fed. R. Civ. P. 1, administration of this massive litigation. The Court has worked closely with both Plaintiffs and Defendants in these cases to issue reasonable and mostly mutually agreeable scheduling orders. Plaintiffs have had ample opportunities to confer with opposing counsel and with the Court in coming up with deadlines that work for all parties. Only by strict adherence to these reasonable deadlines imposed after consultations with counsel can a litigation of this scope be efficiently administered."

*See*, Exhibit "24." After the entry of those amended scheduling orders, countless hours and hundreds of thousands of dollars were poured into completing written discovery, conducting both fact and expert witness depositions, obtaining medical and other records for each plaintiff, seeking and filing opinions and reports of expert witnesses, resolving discovery disputes, drafting and arguing motions, and fully briefing dispositive motions. The burden placed on the parties was onerous to say the least but it was met with great amounts of time and effort. To in effect hit the reset button on these cases and to scrap the efforts put forth in these cases is highly prejudicial to the Defendants and with all due respect to the Court seems unjust. Defendants have complied with the requests and orders of the court and the entry of new scheduling orders at this late stage in these cases in effect wipes the slate clean as if none of this work had been completed. In fact, dispositive motions have been fully briefed in all of these cases. It would unfairly allow Plaintiffs the opportunity to correct all of the willful discovery violations that have already been ruled on by this Court.

### B. Efforts by Defense Counsel to Ascertain Identities of Fact Witnesses.

One of the points the Court raises in the July 22, 2013 Order, is that the record is not clear to the Court whether Defendants moved to compel or objected to discovery responses served upon them. As discussed above, in 2010, the parties agreed on a set of standard

interrogatories to be answered by each of the individual CVLO plaintiffs.  The standard interrogatories were a crucial component to the success of the MDL 875 litigation, as they were designed in large part to disclose the witnesses who would provide testimony regarding any particular defendant in a particular case.  Despite being ordered to respond fully and completely to the standard interrogatories by February 21, 2011, and being asked repeatedly by Defense counsel for the names of those witnesses who would be used to establish their cases, CVLO has routinely failed to disclose this information until well after the close of discovery, and in the form of Declarations attached to Responses to Defendants' Motions for Summary Judgment.

The names of witnesses who would be able to testify regarding a particular Defendant's product in each particular case is clearly requested in the standard interrogatories.  Standard Interrogatory No. 19 states:

> For each of the job sites identified in Interrogatory No. 17, state the following:
>
>> (a) the types of asbestos-containing products for which exposure is claimed;
>>
>> (b) the brand name or trade name of the asbestos-containing products for which exposure is claimed;
>>
>> (c) the manufacturers, suppliers and distributors of each asbestos-containing product for which exposure is claimed;
>>
>> (d) the number of times that plaintiff claims to have been exposed to each product.

Standard Interrogatory No. 20 states:

> For each product identified in Interrogatory No. 19, identify the following:
>
>> (a) Your coworkers, including persons who worked with you or at the same job site, with knowledge that the product was on the particular job site;
>>
>> (b) Your co-workers, _including persons who worked with you or at the same job site, with knowledge that you actually worked with the particular product_.

(emphasis added).  These interrogatories were to be answered fully, completely, and without objection, in each individual case.  (*See,* Exhibit "8").

Shortly after the CVLO cases were transferred to Magistrate Judge Strawbridge for pre-trial proceedings, CVLO, Defense counsel and the Court engaged in weekly conference calls to discuss the status of cases and discovery issues that arose.  Since nearly the beginning of these weekly conference calls, a repeated concern from Defense counsel was CVLO's failure to provide timely and/or complete responses to the standard interrogatories.  Defense counsel, CVLO and the Court engaged in sixty-five (65) weekly Wednesday morning conference calls, totaling nearly forty-five (45) hours over the course of a little more than one (1) year.

CVLO was ordered on November 15, 2010, to provide responses to the standard interrogatories by February 21, 2011.  Despite making the representation to the Court that they would have the responses to the standard interrogatories by the amended deadline, for the vast majority of their cases, CVLO failed to provide responses to the standard interrogatories by that date.  Moreover, despite clear warning from Judge Reed that they would need to seek an extension beyond that deadline if they were unable to meet it, CVLO failed to seek any extension.  Indeed, by July 13, 2012, a year and a half after the responses to the standard interrogatories were due, of the 625 remaining cases, CVLO still had not provided any discovery responses for more than half of their cases:

> Magistrate Judge Strawbridge:  Okay.  So as of this point, then, is it the case that on the, say, approximate 625 remaining cases, that for more than half of them the interrogatories have still not been responded to, either verified or unverified?
>
> Mr. McCoy: Probably – probably in that range, right, and then, of course, most of the cases are in the later groups.

(*See* the July 13, 2012 hearing transcript, 52:2-9, attached hereto as Exhibit "31").

Outside of written discovery, Defendants have asked that CVLO tender the witnesses they intend to rely on to establish their cases multiple times. Moreover, CVLO has been informed numerous times, in several different contexts, of their need to tie a particular plaintiff to a particular defendant's product. In May of 2012, this issue was brought to the Court's attention,

> For example, in one of them, the case of Mr. Albert Centers a -- one cancer plaintiff in CVLO 1/2 subgroup (b), we have in excess of 65 co-workers designated by plaintiffs right now in their interrogatory responses. And what it looks like to me, although I don't know for certain, is it looks like what has happened is plaintiffs have gone into their databases and extracted information of when other CVLO clients, or witness contacts have worked at sites that overlapped the work sites of the plaintiff . . . What we need at this point is, we need a designation from plaintiffs as to which ones of those witnesses they're actually going to rely on.

(*See* relevant portions of the May 2, 2012, hearing transcript, 21:20-25; 22:1-10, attached hereto as Exhibit "32"). Again, in July of 2012, Defendants requested the disclosure of the specific witnesses that CVLO would rely on to establish their case against Defendants:

> And so what I -- you know, what I suggested several weeks ago is that perhaps we insert a deadline or come up with some kind of mechanism to say, 'All right, plaintiffs, who are you going to use, really, in this case? Don't give me 800 pages, give me eight people.' And those are the people we need to be concentrating on working on.

(*See* relevant portions of the July 13, 2012, hearing transcript, 68:15-20, attached hereto as Exhibit "33"). Moreover, during the July 13, 2012 conference, Magistrate Judge Strawbridge stated that "obviously what needs to be responded to, it seems to me, essentially is what are those facts that you believe establish the predicate for the claim that's been made by the plaintiff." (*See* the July 13, 2012 hearing transcript, 62:14-16, attached hereto as Exhibit "34").

Notably, during the July 13, 2012 status conference in Philadelphia, when questioning CVLO and Defense counsel regarding the status of responses to the standard interrogatories, Magistrate Judge Strawbridge stated:  "And by asking these questions, I don't mean to imply that I think there is necessarily an affirmative obligation that a defendant has to file a motion to compel.  In other – or, you know, for their failure to file you guys skate free.  I'm not suggesting or imply [sic.] that.  I'm just trying to get refreshed on what the status of it was.  (*See* the July 13, 2013 hearing transcript, 48:15-21, attached hereto as Exhibit "35").  That statement by the court, of course, comports with FRCP 37(a)(3)(B).

 Aside from the general discussions with CVLO and the Court regarding CVLO's untimely, nonresponsive and incomplete discovery responses, Defendants filed and/or joined motions to compel in at least 107 cases between the end of July 2012 and the beginning of August 2012.  By late summer of 2012, with only a few months left to complete discovery in all of CVLO's cases, CVLO still had not yet provided responses to the standard interrogatories in many cases.  Even in discovery responses that were served shortly before the close of fact discovery, CVLO responded that there were no known co-workers "at this time," and "investigation continues."  (*See* for example, discovery responses served in *Maiden, Reich,* and *Murphy* cases, attached hereto as Exhibit "36").  These are just examples of one of the many recurring problems with the CVLO cases:  that even as fact discovery was about to close, and even after it had closed, CVLO *still* had not identified those witnesses they would rely on to establish their cases.  In granting Georgia-Pacific's Motions to Compel in part, the Court noted that the responses to the standard interrogatories were "sorely overdue."  *See,* August 22, 2012 and September 18, 2012 Orders, attached hereto as Exhibit "37."  The Court also noted that "in order to avoid future objections and motions to strike, plaintiffs are strongly encouraged to fully

answer the interrogatory questions, especially those regarding fact witnesses and their expected testimony." *Id.* Indeed, in November of 2012, Magistrate Judge Strawbridge noted that "the development of Plaintiffs' factual and causal support for their cases should certainly be fully developed by the end of discovery. By providing the basic information requested in the standard interrogatories only at the very close of discovery, Plaintiffs seriously call into question the diligence with which they investigated their claims." *See,* the November 16, 2012 order, pp.8-9, attached hereto as Exhibit "38."

Moreover, in the vast majority of cases, Defendants were in no position to notice depositions. CVLO's discovery responses routinely included lists of names and addresses and stated that the witnesses were clients of CVLO. As the majority of the fact witnesses including in the discovery responses were CVLO clients, Defendants were prohibited from contacting the witnesses to determine whether their testimony would be relevant and/or to schedule a deposition. Defendants had to rely on CVLO to disclose the identity of the witnesses and to notice the depositions; however, CVLO routinely failed to provide this information leaving Defendants with no ability to determine whether any particular individual listed in the discovery responses would ultimately offer testimony regarding their client's products.

Despite several warnings from the Court that CVLO needed to disclose their fact witnesses, it became clear that CVLO was waiting for Defendants to file their Motions for Summary Judgment before deciding which witnesses they would use to oppose them. As Mr. McCoy stated during the November 2, 2012 weekly conference call:

> And all I'm saying is, these motions eat up a lot of time, and yet they're not directed at any particular piece of evidence. *We haven't even had summary judgment motions in the cases for the defense to know what we're going to use in response to the summary judgment motions.*

(*See* relevant portions of the November 2, 2012, hearing transcript, 22:3-8, attached hereto as Exhibit "39").  (emphasis added).  Indeed, another CVLO attorney admitted that their "regular procedure is to wait until a dispositive motion is filed and then, if possible, get declarations signed."  (*See* March 7, 2013 e-mail from Ron Archer, attached hereto as Exhibit "40").  CVLO's position is incorrect and contrary to basic civil procedure principles: by the time that a case is in the dispositive motion briefing stage, *all parties* should be aware of the witnesses and facts of the case.  Although MDL litigation is unique in character, the MDL proceedings did not obviate CVLO's obligation to prove their case: the burden of proof has always rested with Plaintiffs.  CVLO was ordered to disclose their witnesses in the responses to the standard interrogatories, Defendants repeatedly asked CVLO to disclose their witnesses, and CVLO routinely failed to provide Defendants with that most basic of information.

### C.  Affidavits of undisclosed or improperly disclosed witnesses

As this Court is well aware, many of the Defendants' motions for summary judgment were met with a reply from Plaintiffs that included an affidavit or witness declaration of a witness who was not previously disclosed or who was improperly disclosed.  Given that this practice was implemented in a large number of these cases, it is clear that this practice is not due to circumstances beyond the control of Plaintiffs' counsel rather it is a bad faith litigation tactic that the Court cautioned against in the many rulings regarding CVLO's obligations to provide defendants with information regarding a witness's ability to testify about a particular defendant's products and to do so far in advance of the close of discovery.  *See*, Exhibit 28 at p. 7. (Judge Strawbridge explaining that the standard interrogatories used in the CVLO MDL litigation required plaintiff to disclose "**what witnesses, if any, a Plaintiff reasonably believes to be in a position to connect his or her exposure to a particular Defendant's product**") (emphasis

added); *See,* November 20, 2012 Memorandum Order  at p. 1-2, attached hereto as  Exhibit "41.") ("**[W]e have not sanctioned the noticing of depositions after the close of discovery.** GE was not obligated to accept deposition dates proffered by Plaintiffs after the close of discovery.  We will not require them to do so.") (emphasis added); *See,* Exhibit 38 at p. 12. (submission of declarations "from witnesses who may have been disclosed in a non-specific way with many other such witnesses shortly before the close of discovery in a particular case. . . **would raise serious questions concerning the acceptance of such declarations;" "the prejudice to Defendant would be palpable"** if such declarations were submitted in response to summary judgment motion) (emphasis added); *See,* July 17, 2012 Order Regarding Interrogatory Supplements, at p. 2-3, attached hereto as Exhibit "42" (mere names and addresses — without the actual subjects of discoverable information, such as particular job sites, particular product knowledge, and particular time periods — renders a witness list deficient and useless); *See,* May 31, 2012 Memorandum opinion at p. 9, attached hereto as Exhibit "43" (explaining that CVLO's supplemental disclosures of extensive lists of alleged coworker witnesses, additional job sites, and relevant deposition transcripts made two days prior to close of discovery would likely have been stricken under *In re TMI* "given the prejudice to GE").   This intentional modus operandi appears to be confirmed by a March 7, 2013 e-mail from one of the Plaintiffs' counsel who states regarding declarations that "The regular procedure is to wait until an msj is filed and then, if possible, get declarations signed."  *See*, Exhibit "40."  These affidavits or declarations submitted in response to Defendant's dispositive motions are often the lone source of product identification.  Should discovery be reopened it is unlikely that additional depositions would cease this practice.  The Plaintiffs have been quite clear that these declarations are sought only

after motions for summary judgment are filed, which is contrary to the spirit of the discovery rules.

### D.  Omnibus Pleadings

#### a.  Site Worker & Previous Testimony Lists

On June 12, 2012, CVLO began filing what they termed Supplemental Answers to Standard Interrogatories.  This list was updated and amended 16 times after it was initially served to the Defendants as follows:

| Date | Siteworker Pages | Previous Testimony Pages | Total Pages |
|---|---|---|---|
| 6/12/2012 | 553 | 166 | 719 |
| 7/13/2012 | 623 | 179 | 802 |
| 8/24/2012 | 1492 | 226 | 1718 |
| 9/14/2012 | 1539 | 138 | 1677 |
| 9/24/2012 | 1514 | 138 | 1652 |
| 9/28/2012 | 1518 | 143 | 1661 |
| 10/1/2012 | 1541 | 144 | 1685 |
| 10/12/2012 | 1491 | 158 | 1649 |
| 10/26/2012 | 1492 | 166 | 1658 |
| 11/9/2012 | 1501 | 166 | 1667 |
| 12/7/2012 | 1354 | 166 | 1520 |
| 12/21/2012 | 1354 | 166 | 1520 |
| 1/18/2013 | 1336 | 177 | 1513 |
| 2/1/2013 | 1339 | 177 | 1516 |
| 3/20/2013 | 1347 | 179 | 1526 |
| 4/15/2013 | 1349 | 179 | 1528 |
| 4/26/2013 | 1346 | 178 | 1524 |

All of the lists filed from June 12, 2012 through November 8, 2012, were styled as Supplemental Responses to Standard Interrogatories.  However, beginning with the December 7, 2012 list and going forward, the lists were titled as Plaintiffs' Rule 26 Disclosures.  *See*, Site Worker and Previous Testimony lists, attached hereto as Exhibit "44."  The original lists that

were served totaled 719 pages, which grew with almost ever new iteration until the lists were

over 1,700 pages.  These lists were not specific to any plaintiff's claim but were general attorney

knowledge on the part of CVLO and were intended to have global application to all CVLO cases

pending in MDL 875.  The site worker lists contained only the name and address of the witness,

a broad description of the work site, and whether that individual is represented by CVLO.  The

previous testimony document contained a list of transcripts by work site, including the

deponent's name, date of testimony, whether the deponent is represented by CVLO and in some

instances the name and cause number for the case for which the testimony was taken.  Certain

Defendants, feeling aggrieved by the general nature of the lists, their unduly burdensome nature,

and the notion that any of the witnesses listed on hundreds of pages could be called without any

additional disclosure in case specific interrogatory responses, filed a Motion to Strike on June 26,

2012, attached hereto as Exhibit "45."  After hearing oral argument on the Motion to Strike on

July 13, 2012, the Court denied the Motion to Strike these supplemental responses.  *See,* Exhibit

"42."  In that July 17, 2012 Order, the Court while noting the lists "could be useful and bear

some relevance as the cases progress" was clear regarding the deficiencies with the massive lists.

*Id.* at p. 2.  The Court stated:

> The standard interrogatories were approved by the court on
> October 5, 2010 and were deemed to be served in each
> individual CVLO MDL-875 case as of October 1, 2010.
> Each individual plaintiff in each case was to answer the
> interrogatories utilizing the information unique to his or her
> case.  This purported supplement to interrogatories 6
> through 17, 20 and 29, however, is meant to have global
> application in every case rather than be limited to any
> individual plaintiff's case, and contains no specificity
> regarding to what any of these individuals might testify or
> the contents of any of the transcribed statements.
> Accordingly, this massive listing is not a supplement to any
> previous answers served in the individual cases nor does it
> provide responses to any of the standard interrogatory

questions submitted in any individual cases. . . .**The list's generality and lack of detail render it incapable of being used by any defendant in any particular case.**

*Id.* (emphasis added). The Court detailed the failures of these lists including that the lists failed "to provide any indication of the extent of knowledge of the "site-workers,'" the products or the time periods the site-worker had knowledge of at a particular work site. *Id.* at pp. 2-3. The Court concluded by reminding the plaintiffs that the mere association of a worker at a job site is not sufficient to "begin to establish causation evidence a plaintiff would need to sustain his case." *Id.* at p. 3. Seeming to ignore the directives of the Court's July 17, 2012, Plaintiffs continued to file the ever expanding omnibus Supplemental Responses to Standard Interrogatories which failed to provide specific details about the site-workers, the products, and the particular plaintiff to which their testimony may be relevant. Plaintiffs did not avail themselves of this clear opportunity to amend the individual interrogatory responses with any relevant information from the omnibus lists and filed additional omnibus site worker and previous deposition testimony lists on July 13, 2012, August 24, 2012, September 14, 2012, September 28, 2012, October 1, 2012, October 12, 2012, October 26, 2012, and November 9, 2012.

On October 23, 2012, Certain Defendants filed a Motion to Bar all of these witnesses disclosed in the omnibus lists who were not otherwise properly disclosed during discovery in all remaining CVLO 3 cases. After additional briefing and argument on the Motion to Bar, it was granted on December 27, 2012 and accompanied by a detailed memorandum regarding the Court's Order. *See,* Exhibits "28" and "46." The Court noted in its 13 page Memorandum that the lists identified "in excess of 15,000 persons." *See*, Exhibit "46" at p. 4. The Court went through a thorough analysis of the contention that these responses were in fact supplemental

interrogatory responses and found that the lists were not proper in this context. *Id.* at p. 5. Further, the Court struck these responses as unverified. *Id.*  In addition to the contention that these lists constituted supplements to the interrogatory responses, CVLO also in their briefing and oral argument contended that the lists were in fact Rule 26 supplements.   The Court concluded that these lists were "not interrogatory responses, Rule 26(e) disclosures, or witness disclosures applicable to any individual case.  Plaintiffs are barred from offering evidence by affidavit in response to a motion for summary judgment or at trial, unless they were properly disclosed elsewhere during discovery." *Id.* at p. 13.  After this Order and Memorandum were entered, CVLO filed a Motion to Reconsider, which after full briefing, was denied on February 1, 2013.  *See,* Order, attached hereto as Exhibit "47."

During the period while briefing and arguments were occurring on the Motion to Bar for CVLO 3, Plaintiffs continued to file the omnibus lists; however, beginning with the December 7, 2012 lists and continuing through all present lists, the site worker and past testimony lists are styled as Rule 26 Disclosures rather than supplemental interrogatory responses.   Additional omnibus lists were served on December 21, 2012, January 18, 2013, and February 1, 2013.  On March 11, 2013, Certain Defendants filed a Motion to Bar the site worker and past testimony lists in the remaining top 10, CVLO 1 & 2 and CVLO 4-7 cases.  On March 20, 2013, CVLO filed additional omnibus site worker and prior testimony lists.  On April 1, 2013, the Motion to Bar was granted for these additional cases.  *See*, Exhibit "29."  Plaintiffs filed objections to this April 1, 2013 Order, and also filed two (2) additional omnibus lists on April 15, 2013 and April 26, 2013.  Those Objections were overruled by this Honorable Court on April 30, 2013 and those improperly disclosed witnesses are prohibited from being called at trial or offering affidavits or declarations in opposition to Defendants' dispositive motions.  *See,* Exhibit "48."

Based on extensive pleadings and arguments surrounding these lists, it is clear that CVLO made a conscious, tactical decision to continuously file these mass supplements rather than supplement the individual plaintiff's interrogatory responses with the information regarding fact witnesses that would support each individual plaintiff's claim.  They were given multiple opportunities to change their tactics and choose not to do so.  At this late stage in the proceedings to re-open fact discovery and allow the introduction of more than 15,000 improperly disclosed witnesses to support the plaintiff's claims is unconscionable.

### b.  Supplemental Expert Report

On January 24, 2013, the Defendants were served with an amended witness statement from Plaintiffs' expert witnesses, Messrs. Garza and Kenoyer.  This pleading was served as a supplement in all CVLO cases despite the fact that discovery had closed in all cases "by at least two and a half to nearly nine months before the service of the Amended Statement."  *See*, April 3, 2013 Explanation and Order, attached hereto as Exhibit "49."  When given the opportunity to address the reasons for the untimely supplementation, Plaintiffs' Counsel did not provide any specific information regarding why striking these reports would be dispositive, as they claimed in their papers, or why this amended information was not included in the original reports authored by these experts.  Due to this inability to justify the filing of the amended reports, the Court "necessarily concluded that the Amended Statement is not a proper Rule 26(e) supplementation."  *Id.* at p. 4.  CVLO also used this supplement as an attempt to re-open discovery in all of these cases.  However, the Court was not persuaded that was a necessary action.  "We conclude that this "cure" would be highly disruptive to the remaining CVLO MDL cases, and, in time, would likely affect nearly all 198 cases in which the Amended Statement was filed.  **While we hesitate to assign willfulness to any counsel who appears before us**

**representing truly injured parties, we have no difficulty making such a conclusion here where CVLO, throughout the litigation of these cases, has been repeatedly reminded of its obligations to follow the scheduling orders and to provide complete and timely discovery. It appears that this admonition has again gone unheeded."** *Id.* at p. 5 (emphasis added).  The court struck the Amended Statement of Messrs. Garza and Kenoyer and declined to reopen discovery.

## IV.    CONCLUSION

At the time of the filing of this Objection, the discovery deadlines established by the Court by the CMSOs have run for the one hundred and twenty (120) CVLO plaintiffs listed in the exhibit to the Court's July 22, 2013 Order.  The discovery deadline for the last group of plaintiffs closed on December 3, 2012.  *See,* Exhibit "22."  It is clear from the dockets, the hearing transcripts, and the reduction in the overall inventory of CVLO MDL 875 cases that the Defendants have worked diligently for nearly four (4) years to complete the discovery, investing an enormous amount of time and money to litigate these matters.  Written discovery has been exchanged, depositions are completed, and expert reports are on file.  Dispositive motions are filed, fully briefed and ready for hearing.  There is no need to reopen discovery in these matters or to revisit the many, many discovery disputes that have already been ruled on by the Court.  The amount of time and money expended on these actions should not be ignored, particularly when there is no need for additional time to complete discovery.

Based on the foregoing, the Certain Defendants beseech this Court not to allow the Plaintiffs to reap benefits from the chaos they created in this litigation and respectfully request that no new scheduling order be entered.  Certain Defendants further entreat the court to issue an

order that discovery remain closed and that rulings be issued on the outstanding dispositive motions.

THIS, the 21st day of August, 2013.

Respectfully Submitted,

*/s/ Jennifer M. Studebaker*
JENNIFER M. STUDEBAKER (MSB# 10433)
ATTORNEY FOR CERTAIN DEFENDANTS

OF COUNSEL:

FORMAN PERRY WATKINS KRUTZ & TARDY LLP
200 South Lamar Street
City Centre Building, Suite 100
Post Office Box 22608
Jackson, Mississippi 39225-2608
Telephone:     (601) 960-8600
Facsimile:     (601) 960-8613

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 21st day of August, 2013, I caused to be filed via the CM/ECF system the foregoing document and that the service will be provided to all participants in the case by the CM/ECF system.

*/s/ Jennifer M. Studebaker*
JENNIFER M. STUDEBAKER